# CASTOR v PENCHANSKY
### Case No. 87-2689
State of Florida, Division of Administrative Hearings
December 11, 1987

## APPEARANCES OF COUNSEL

**J. David Holder** for petitioner.

**Joyce Lipkin Penchansky** pro se.

## OPINION OF THE COURT

LINDA M. RIGOT, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, this cause was heard by Linda M. Rigot, the assigned Hearing Officer of the Division of Administrative Hearings, on September 29, 1987, in Miami, Florida.

Petitioner Betty Castor, as Commissioner of Education, was represented by J. David Holder, Esquire, Tallahassee, Florida; and Respondent Joyce Lipkin Penchansky appeared on her own behalf.

Petitioner filed an Administrative Complaint against Respondent

seeking disciplinary action against Respondent's teaching certificate. Although Respondent admitted several of the allegations contained within that Administrative Complaint, she requested a formal hearing as to the remaining allegations. Accordingly, the issue for determination herein is whether Respondent is guilty of the allegations contained within the Administrative Complaint, and, if so, what disciplinary action should be taken against her, if any.

Petitioner presented the testimony of Willie Mae Brown; Walter G. Foden, Jr.; Gwendolyn Bryant; Margaret Rogers; Helen B. Francis; Eneida Hartner; and Dr. Patrick Gray. The Respondent testified on her own behalf. Additionally, Petitioner's Exhibits numbered 1-30 and Respondent's Exhibits 1-8 were admitted into evidence.

Petitioner submitted posthearing proposed findings of fact in the form of a proposed recommended order, and Respondent submitted posthearing correspondence. Rulings on each proposed finding of fact can be found in the Appendix to this Recommended Order.

## FINDINGS OF FACT

1. The Respondent holds Florida Teaching Certificate 297447 covering the area of elementary education.

2. At all times pertinent hereto, the Respondent was employed as an elementary school teacher in the Dade County School District.

3. During the 1983-84 school year, the Respondent was employed as a second grade teacher of Chapter I students at Lillie C. Evans Elementary School.

4. During the 1984-85 school year, the Respondent was again employed at Lillie C. Evans Elementary School as a second grade teacher. In March 1985, Respondent was transferred to Miami Springs Elementary School for the remainder of the school year as a result of an altercation involving an irate parent.

5. During her tenure at Lillie C. Evans Elementary School, Respondent was assigned approximately 16 students in her second grade classes each year.

6. Respondent was assigned a fourth grade class at Miami Springs Elementary School from March through June 1985. The Respondent's class contained approximately 30 students.

7. Respondent was a first year annual contract employee of the Dade County Public Schools during the 1983-84 school year and a second year annual contract employee of the Dade County Public Schools during the 1984-85 school year.

8. Respondent was not reappointed for the 1985-86 school year as an employee of the Dade County Public Schools because she failed to perform at an acceptable level of professional performance at two different schools, under two different administrations, with two different sets of students.

9. The principal of Lillie C. Evans Elementary School, Willie Mae Brown, is a thirty-six year employee of the Dade County School System. Ms. Brown was Respondent's principal during Respondent's employment at Lillie C. Evans Elementary School. Ms. Brown has been trained to observe and evaluate the professional performance of classroom teachers and has observed and evaluated hundreds of teachers in her position as principal.

10. On May 31, 1984, Brown prepared the Respondent's annual evaluation for the 1983-84 school year. She rated Respondent as unacceptable in the category of classroom management and noted in the remarks section of the evaluation that Respondent "should continue participating in workshops that will enable her to acquire techniques in instruction and classroom management."

11. Brown requested that Respondent attend workshops on techniques of instruction and classroom management during the 1983-84 school year and that she observe fellow teachers in the school in order to improve Respondent's performance in the classroom.

12. During the 1984-85 school year, Brown continued to observe serious problems with Respondent's control of student conduct and classroom management. On October 1, 1984, Brown overheard a child screaming loudly in the Respondent's classroom as if the child was in pain.

13. When Brown observed Respondent on October 5, 1984, she noted that Respondent was unable to manage the class, failed to use nonverbal techniques and few verbal techniques to deal with students who were off-task. Brown observed that pupils were moving about and making noise in the classroom. Respondent's lesson plans did not appear to have enough activities to occupy the students' attention. Respondent was provided with "prescription plan" activities and recommended resources for implementation of the prescriptions. Brown provided a time line for improvement of October 29, 1984.

14. On October 24, 1984, Brown prepared a log of assistance which had been provided to Respondent. Brown's log noted that on October 1, 1984, Mrs. Mayme Moore, North Central Area Chapter I Resource Teacher, provided special assistance to Respondent concerning control of student conduct. In addition, Brown documented assistance pro-

254

vided to Respondent by Teacher Lena Hoskins; Teacher Sharon Sbrissa; Mr. Mitchell, School Guidance Counselor; Walter Foden, Assistant Principal; and others.

15. As a follow-up to the October 5, 1984 observation, Brown again observed Respondent's classroom performance on October 29, 1984. Brown observed that the Respondent's performance was deficient in preparation and planning and classroom management. Brown observed a large number of children off-task. Respondent still appeared to be unable to manage her students. Again, Respondent failed to provide enough activities to occupy the students for the full class period. Brown noted that two pupils fell asleep during the class. Once again, Brown prescribed plan activities and recommended resources to Respondent with a time line of November 15, 1984. Brown continued to provide Respondent with assistance through the Teacher Education Center and through fellow teachers.

16. On November 21, 1984, Brown found four of Respondent's students creating a disturbance in a bathroom. Upon returning these students to Respondent's classroom, she observed eight or nine of the twelve students in the classroom running around making noise.

17. During the course of the 1984-85 school year, Ms. Brown received three or four written complaints and several additional telephone calls from parents complaining about Respondent's class. The nature of the parental complaints concerned Respondent's lack of control of student conduct in the classroom.

18. On December 10, 1984, a conference for the record was held by Brown with Respondent and her union representative to address parent complaints, the complaint of the primary helping teacher for Respondent, Respondent's performance assessment to date and her employment status. At the conference, Respondent was advised of letters of complaints from parents and peers regarding her classroom management. Respondent was afforded the opportunity to identify a fellow teacher with whom she could confer and observe. Respondent did not indicate a preference for peer assistance.

19. As primary helping teacher, Ms. Scurry complained that Respondent's inability to control students in her classroom was requiring Ms. Scurry's assistance almost every day. Scurry expressed concern to Brown about Respondent's continuous need for assistance with her students which was interfering with Scurry's instruction of her own class.

20. In addition to Scurry, two other teachers, Ms. Drawley and Ms. Bell, made written complaints to Brown concerning the disruption of

255

their respective classes due to excessive noise emanating from Respondent's classroom.

21. At the request of Principal Brown, on November 1, 1984, Respondent prepared a summary of assistance which the Respondent received during the year. Respondent's handwritten narrative discloses that she received assistance from Mrs. Sbrissa, Mrs. Hoskins, Mrs. Moore, Mrs. Knight, Ms. Johnson, Ms. Brown, and Mr. Foden.

22. Brown continued to require that Respondent attend prescriptive in-service courses through the Teacher Education Center in the latter half of the 1984-85 school year. Specifically, Brown requested that Respondent attend courses concerning classroom management and preparation and planning.

23. On February 15, 1985, a joint observation of Respondent's professional classroom performance was conducted by Brown and Mrs. Eneida Hartner, the Area Director for the North Central Area of the Dade County Public Schools. Each observer evaluated Respondent's performance separately. Respondent received advance notice of the observation.

24. The combined evaluations of Brown and Hartner resulted in an overall rating of unacceptable, with specific ratings of unacceptable in the areas of preparation and planning and classroom management. Respondent was once again provided with prescription plan activities, recommended resources with which to implement the activities and a time line for improvement.

25. Both observers noted that Respondent failed to provide sufficient activities for the class period to occupy the students' time for the entire period and, as a result, students were off-task. Respondent failed to motivate her students to be interested in the task at hand and failed to provide appropriate feedback concerning the students' behavior.

26. In March, 1985, Brown again received a memorandum from the Teacher Education Center regarding prescriptive in-service courses for the Respondent. Brown requested that Respondent attend the course on classroom management. Subsequently, on April 15, 1985, Ms. Brown was notified by memorandum that the Respondent had failed to attend the classroom management course prescribed for her.

27. During the 1984-85 school year, many educators from Lillie C. Evans Elementary School and from the school district provided Respondent with assistance at the request of Brown in an effort to remediate Respondent's observed deficiencies.

28. In addition to Principal Brown, Assistant Principal Walter

Foden observed and evaluated Respondent's performance. On November 19, 1984, Foden conducted an observation of Respondent's classroom and found her to be deficient in the area of classroom management. In the TADS observation form, Foden identified the areas of deficiency, prescribed plan activities for improvement, indicated recommended resources, and provided a time line for Respondent's improvement.

29. Foden observed that Respondent was unaware of children's' off-task behavior in the classroom despite the fact that thee were only 12 to 13 children in her classroom at the time. Foden recommended six individuals to provide Respondent with assistance, and each of the six did provide assistance to her.

30. Foden also observed Respondent on September 12, 1984. Based upon this observation, Foden concluded that Respondent was deficient in classroom management and in the teacher-student relationship. The students ignored Respondent, would not listen to her and appeared to lack respect for her. In addition, Respondent's instructions were unclear. Foden recommended four resource persons to Respondent. These individuals provided Respondent with the assistance requested.

31. Gwendolyn Bryant, Primary Education Coordinator for the Dade County School System, provided assistance to Respondent at the request of Principal Brown. Bryant met with Respondent in her classroom on December 12, 1984, and on January 9, 1985. Bryant observed that Respondent needed assistance with classroom management and with the implementation of the primary education program. Bryant returned on January 9, 1985, and reviewed the procedures for implementing PREP, RSVP (Reading Systems Very Plain) and TMP (Total Math Program).

32. During her January visit, Bryant found that Respondent had not yet evaluated her students to determine their needs under these programs. The evaluations of the students' individuals needs should have been completed at the beginning of the school year.

33. Bryant concluded that Respondent was in need of continuing assistance with classroom organization and management.

34. Margaret Rogers, teacher on special assignment to the Reading Department, provided assistance to Respondent in April 1985 at Miami Springs Elementary School. Rogers reviewed RSVP with Respondent, reviewed the Respondent's grouping of students for reading, provided the Respondent with handouts on teaching a directed reading lesson and classroom management, rearranged the students' desks to comply

with fire code and to provide access to the blackboard, and provided Respondent with numerous suggestions on control of student conduct.

35. On the following day, April 2, 1985, Rogers demonstrated a written lesson for Respondent and provided Respondent with information on RSVP and teaching a directed reading lesson.

36. During her tenue at Miami Springs Elementary School, Respondent received assistance from Helen B. Francis, Assistant Principal. It was Ms. Francis who requested that Mrs. Rogers provide assistance to Respondent.

37. On April 15, 1985, Ms. Francis conducted a formal observation and evaluation of Respondent's classroom performance. Ms. Francis rated Respondent deficient in the categories of preparation and planning, classroom management and techniques of instruction. Francis observed that Respondent failed to control student conduct, resulting in constant disruptions and interference in the reading lesson which she was attempting to conduct at the time.

38. Ms. Francis was in the Respondent's classroom almost on a daily asis because of constant complaints from parents and other teachers.

39. Francis concluded that Respondent was unable to provide her students with appropriate instruction because she could not maintain control of the children's behavior.

40. On March 29, 1985, Principal Margot J. Silverman observed and evaluated Respondent's teaching performance. Based upon that observation, Dr. Silverman rated Respondent deficient in the areas of preparation and planning, classroom management and techniques of instruction. Dr. Silverman provided an intensive description of the observed deficiencies and numerous specific suggestions for improvement.

41. Silverman observed Respondent's performance again on May 13,1985. Based upon the observation, Dr. Silverman evaluated Respondent's performance to be unacceptable in the categories of preparation and planning, classroom management, techniques of instruction and teacher-student relationships. Again, Dr. Silverman provided a detailed description of the observed deficiencies as well as specific suggestions for improvement.

42. On May 30, 1985, Dr. Silverman prepared Respondent's annual evaluation for the 1984-85 school year. On the evaluation, Silverman rated Respondent's performance as unacceptable in the categories of preparation and planning, classroom management, techniques of instruction and teacher-student relationships. Silverman rated Respon-

dent's overall performance as unacceptable and recommended that she not be reemployed for the following school year.

43. Dr. Patrick Gray, Executive Assistant Superintendent in the Office of Professional Standards for the Dade County Public Schools, testified at formal hearing that in his professional opinion, Respondent has proven to be incompetent as a classroom teacher, by the standards of both the County School System and the Florida Department of Education.

44. In Dr. Gray's expert opinion, Respondent's personal performance in the classroom has seriously reduced her effectiveness as an employee of the Dade County School Board.

45. Dr. Gray determined from a review of all of the observations, both internal and external, that Respondent's professional performance was worsening, rather than improving, despite extensive assistance to help her remediate her deficiencies. Gray's review of Respondent's personnel file discloses that the Respondent did not achieve an acceptable level of performance in any of the nine classroom observations conducted of her during the 1984-85 school year.

46. Gray is unaware of any additional assistance which the Dade County School System could provide to Respondent to assist her in remediating perceived deficiencies beyond the assistance which has been previously provided to her.

### CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the subject matter hereof and the parties hereto. Section 120.57(1), *Florida Statutes.*

Section 231.28(1), *Florida Statutes,* provides that the Education Practices Commission shall have the authority to suspend or revoke the teaching certificate of any person who:

(b) Has proven to be incompetent to teach or to perform duties as an employee of the public school system or to teach in or to operate a private school;

\* \* \*

(f) Upon investigation, has been found guilty of personal conduct which seriously reduces that person's effectiveness as an employee of the school board;

\* \* \*

(h) Has otherwise violated the provisions of law or rules of the State

259

Board of Education, the penalty for which is the revocation of the teaching certificate.

The Administrative Complaint filed herein alleges that Respondent failed to demonstrate the minimal standards of competency required of educators in Floridan that she has:

(a) Failed to make adequate preparation and planning for the instruction of her students;

(b) Failed to prepare lesson plans or failed to prepare adequate lesson plans;

(c) Failed to employ appropriate disciplinary techniques suitable to the particular situations;

(d) Failed to adequately manage and control students in her classroom;

(e) Failed to utilize adequate techniques of instruction in the classroom;

(f) Failed to maintain a teacher-student relationship conducive to learning;

(g) Failed to create and maintain a classroom environment conducive to learning; and

(h) Failed to maintain proper supervision of her students in the classroom.

When Respondent filed her Election of Rights requesting a formal hearing, she admitted the allegations in subparagraphs (d) and (e), and Petitioner has proven the allegations in the remaining subparagraphs. Respondent's conduct is in violation of Rule 6B-1.06(3)(a), *Florida Administrative Code,* in that she has failed to make reasonable effort to protect the students from conditions harmful to learning. Accordingly, she has also violated section 231.28(1)(h), *Florida Statutes.* Similarly, Petitioner has met its burden of proving Respondent in violation of §§ 231.28(1)(b) and (h), *Florida Statutes.*

In its proposed recommended order Petitioner recommends that Respondent's Florida teaching certificate be permanently revoked. During the 1984-85 school year Respondent failed to achieve an acceptable level of performance in any of the nine classroom observations conducted of her at two different schools, under two different administrators, with two different sets of students. In view of the consistent evaluations of incompetency, revocation is appropriate.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is,

RECOMMENDED that a Final Order be entered finding Respondent guilty of the allegations contained within the Administrative Complaint and permanently revoking Respondent's Florida Teaching Certificate.

DONE and RECOMMENDED this 11th day of December, 1987, at Tallahassee, Florida.